**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

DIANA P.,

                                        Plaintiff,

    v.
                                                                                No. 3:19-CV-593

ANDREW SAUL,                                                    (CFH)
Commissioner of Social Security,

                                        Defendant.

_____

**APPEARANCES:**                               **OF COUNSEL:**

Lachman, Gorton Law Firm                 PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089
Attorneys for plaintiff

Social Security Administration             LOUIS JOHN GEORGE, ESQ.
Office of Regional General Counsel,
Region II
26 Federal Plaza, Rm. 3904
New York, New York 10278
Attorney for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER[1]

    Plaintiff Diana P.[2] brings this action pursuant to 43 U.S.C. § 405(g) seeking

review of the third decision by the Commissioner of Social Security ("the

---

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18. See Dkt. No. 6.

[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff by first name and last initial.

Commissioner") denying her application for disability insurance benefits and supplemental security income ("SSI") benefits. See Dkt. No. 1 ("Compl.").[3] Plaintiff moves for reversal and remand for the determination of benefits and, in the alternative, for further administrative proceedings, and the Commissioner cross moves for a judgment on the pleadings. See Dkt. Nos. 9, 10. For the following reasons, plaintiff's motion is granted, the Commissioner's motion is denied, and the matter is reversed and remanded for further administrative proceedings.

## I. Background and Procedural History

On March 25, 2011, plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income. See T. 152, 159.[4] In both applications, plaintiff alleged a disability onset date of January 1, 2010. See id. Her applications were denied on July 6, 2011. See id. at 74. Plaintiff requested a hearing, and a hearing was held on October 5, 2012, before Administrative Law Judge ("ALJ") Bruce S. Fein ("ALJ Fein"). See id. at 8-9, 29-59. On December 12, 2012, ALJ Fein issued an unfavorable decision. See id. at 10-23. As relevant here, ALJ Fein concluded at step two that plaintiff had the following severe impairments: scoliosis, left tibial tendinitis, obesity, and depressive disorder. See id. at 15. ALJ Fein further noted that plaintiff was diagnosed with sleep apnea, but stated that "there [wa]s no evidence to support any functional restrictions that have

---

[3] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18. See Dkt. No. 6.

[4] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Dkt. No. 8. Citations refer to the pagination in the bottom right-hand corner of the administrative transcript, not the pagination generated by CM/ECF.

been imposed based on [this] condition[].  With no evidence from a medically acceptable source to establish a significant limitation on [plaintiff's] ability to perform basic work activities"; therefore, ALJ Fein concluded, plaintiff's sleep apnea was not a severe impairment.  Id. at 16.  ALJ Fein found that plaintiff had the following residual functional capacity ("RFC"):

> to lift and carry up to 10 pounds occasionally and five pounds frequently; sit for six hours in an eight-hour workday; and stand/walk for two hours in an eight-hour workday, with allowances to alternate between sitting and standing every three-to-four hours in conformity with normal work breaks.  She can occasionally climb, balance, stoop, kneel, crouch, and crawl.  She can only occasionally operate foot controls with her left foot.  Because of her depressive disorder, she is unable to perform production rate or pace work.

Id. at 18.  On January 13, 2014, the Appeals Council denied plaintiff's request for review.  See id. at 1-4.  Plaintiff appealed.

On January 8, 2015, the Court vacated the Commissioner's determination and remanded.  See T. 601.  In an oral decision following a hearing, Magistrate Judge ("M.J.") Peebles observed that the record contained testimony from Dr. Rosenberg stating that plaintiff required at least 10 minutes of rest per hour and could be expected to be absent from work up to four times per month.  See id.  Further, M.J. Peebles noted that Dr. Magurno and plaintiff's co-workers testified concerning her need to nap.  See id. at 609.  As relevant here, M.J. Peebles held that "[t]he physical component of the RFC finding . . . is supported by substantial evidence with one exception.  I do agree [with plaintiff] that the sleep apnea and the napping requirement should have been considered severe at step two and should have been factored into the RFC finding."  Id.  Moreover, M.J. Peebles concluded that "[t]he real issue in [his] opinion [wa]s the failure

3

to account for the finding by the ALJ that plaintiff suffers from a moderate limitation in concentration, persistence[,] or pace," and stated that "there [we]re non-exertional limitations that do have a sufficient effect on the job base on which the grids are predicated so as to require that a vocational expert be called." T. 609-10. In addition, M.J. Peebles explained that he was "persuaded by the testimony, although it was not before the ALJ, frankly, of Victor Gerard Alberigi, and when he applied the RFC with the additional finding of moderate limitation in persistence, concentration[,] and pace, he concluded there were no jobs that the plaintiff could perform." Id. at 610. In M.J. Peebles' "view, that[ was] persuasive, powerful evidence that a vocational expert should have been called and his or her opinion sought to determine whether this plaintiff could, given her limitations, perform meaningful work available in the national and local economy." Id. Thus, the Court vacated the Commissioner's determination on the ground that it was not based on "the application of proper legal principles and [not] supported by [substantial] evidence," and remanded "without a directed finding of disability for further proceedings including to elicit testimony from a vocational expert." Id.

Upon remand, following a second hearing, ALJ Fein issued a second unfavorable decision on July 26, 2016. See T. 1014-35. ALJ Fein found, at step two, that plaintiff suffered from the same severe impairments as in his first decision and again concluded that plaintiff's sleep apnea was non-severe. See id. at 1021. He further found that plaintiff had a RFC to

> perform less than a full range of sedentary work as defined
> in 20 CFR 404.1567(a) and 416.967(a), with ability to
> lift/carry 10 pounds occasionally and less than 10 pounds
> frequently; sit 6 hours total in a routine 8-hour workday with

>> normal breaks; and stand/walk 2 hours total in such a
>> workday with normal breaks; and all postural activities
>> occasionally except no climbing ropes/ladders/scaffolds; and
>> occasional operation of foot controls with the left foot; and
>> mentally, with work limited to simple/routine/repetitive tasks,
>> in a[] work environment free of fast-paced production
>> requirements, involving only simple, work-related decisions,
>> with few, if any, workplace changes.

Id. at 1022-23.  Plaintiff appealed and, on April 5, 2017, the Court, upon stipulation of the parties, again remanded to the Commissioner for further proceedings.  See id. at 1036-39.  On July 26, 2017, the Appeals Council vacated the Commissioner's July 26, 2016 determination and remanded to a different ALJ to: (1) comply with this Court's January 8, 2015 order by considering plaintiff's diagnosis of sleep apnea and napping requirement as severe impairments at step two and to factor them into the RFC determination; and (2) consider Alberigi's deposition.  See id. at 1042-43.[5]

On July 9, 2018, and February 27, 2019, video hearings were held before ALJ Kenneth Theurer ("ALJ Theurer") at which a vocational expert, Rena Serkin ("Serkin") testified.[6]  See T. 949-80; 981-1013.  On March 7, 2019, ALJ Theurer issued an unfavorable decision.  See id. at 921-35.  Plaintiff did not file written exceptions, and the Appeals Council did not review the ALJ's March 2019 decision; therefore, the ALJ's March 2019 decision became the final decision of the Commissioner on May 7, 2019, the 61st day following the date of the ALJ's notice of decision on March 7, 2019.  See id. at 1015; see also Marchand v. Comm'r of Soc. Sec., No. 17-CV-3252 (ENV), 2017 WL

---

[5] As the Appeals Council explained in its order upon remand of the Court's April 5, 2017 decision and order, Alberigi's deposition was not included in the record at the time of the first ALJ decision, but was submitted to the ALJ prior to the second hearing on June 16, 2016; however, despite the Court's January 8, 2015 order directing the ALJ to consider Alberigi's deposition, for reasons not directly relevant here, he declined to do so.  See T. 1043.

[6] Alberigi did not testify at the July 9, 2018 hearing or the February 27, 2019 hearing.

5

2633511, at *2 (E.D.N.Y. June 14, 2017) ("[W]here, as here, the case has been remanded from federal court, the ALJ's subsequent decision on remand becomes the 'final decision' of the Commissioner unless the Appeals Council assumes jurisdiction of the case within 60 days after the ALJ's decision is issued." (quoting 42 U.S.C. §§ 404.984(d), 416.1484(d)). Plaintiff filed the present motion on October 11, 2019, and the Commissioner cross-moved on January 27, 2020. See id. Dkt. Nos. 9, 15.

## II. Discussion

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. See Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)). The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would *have to conclude otherwise*." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotations marks omitted). Where there is reasonable

doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986).  However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

## B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ."  42 U.S.C. § 423(a)(1).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  Id. § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  See id. § 423(d)(2)(A).  Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and

work experience." Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (spacing added). The plaintiff bears the initial burden of proof to establish each of the first four steps. See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. (citing Berry,

675 F.2d at 467). "In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).

### C. ALJ Decision

Applying the five-step disability sequential evaluation, ALJ Theurer determined that plaintiff had not engaged in substantial gainful activity since January 1, 2010, the alleged onset date. See T. 924. At step two, the ALJ found that plaintiff had the following severe impairments: a back impairment, left tibial tendinitis, a disorder of the left ankle, sleep apnea, obesity, depression, and anxiety. See id. At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. See id. at 925. Before reaching step four, the ALJ concluded that plaintiff retained the RFC to

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except [plaintiff] is unable to climb ladders/ropes/scaffolds, and she can only perform other postural activities occasionally. [Plaintiff] can occasionally operate foot controls with the left foot. [Plaintiff] is limited to simple, routine[,] and repetitive tasks in a work environment free of fast-paced production requirements involving only simple, work-related decisions with few, if any, workplace changes. [Plaintiff] should have no more than incidental contact with the public. Specifically, the job should not involve direct interaction with the public, but [plaintiff] does not need to be isolated from the public.

Id. at 927. At step four, the ALJ found that plaintiff had no past relevant work. See id. at 933. At step five, the ALJ found that, "[b]ased on the testimony of the vocational

9

expert[ and] considering [plaintiff's] age, education, work experience, and [RFC], [plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Id. at 934. Thus, the ALJ determined that plaintiff "ha[d] not been under a disability, as defined in the Social Security Act, from January 1, 2010, through the date of this decision." Id.

### D. Analysis

#### 1. ALJ Theuren Failed to Comply with the Court's Remand Order

Plaintiff first argues that ALJ Theurer failed to follow the Court's January 2015 remand Order with respect to the Court's direction that plaintiff's "sleep apnea and the napping requirement should have been considered severe at step two and should have been factored into the RFC finding." Dkt. No. 9 at 14.[7] quoting T. at 609.  Plaintiff contends that the Court's January 2015 directive to include plaintiff's sleep apnea and napping requirement in the RFC determination constituted the law-of-the-case and that ALJ Theurer's failure to include those findings in his RFC determination constitutes reversible error. See id.  Further, plaintiff posits that, although "ALJ [Theurer] did find the sleep apnea to be severe, he d[id] not account for limitations to concentration or persistence and the need for napping," and did not "find[] any limitation caused by sleep apnea [or] explain how any such limitations [we]re accounted for in the RFC," as required by the Court's 2015 remand Order. Id. at 14, 15. Moreover, plaintiff posits that "[b]ecause the ALJ not [sic] cite to any new evidence to support his conclusion, there was no basis (legal or factual) for the ALJ to disregard this Court's prior factual findings

---

[7] The Court's citations to the parties' briefs refer to the pagination generated by CM/ECF at the headers of the page, not to the pagination of the individual documents.

and the law of the case that the sleep apnea causes limitations to concentration, persistence, and pace that must be accounted for in the RFC." Id. at 15.

The Commissioner counters that plaintiff misconstrues the Court's remand instructions and that ALJ Theurer complied with the remand instructions concerning plaintiff's sleep apnea.  See Dkt. No. 15 at 6, 7.  The Commissioner observes that ALJ Theurer "acknowledged that sleep apnea was a severe impairment" at step two, and contends that the law-of-the-case doctrine did not limit the ALJ in making his RFC determination with respect to plaintiff's sleep apnea.  See Id. at 6.  In particular, the Commissioner contends that the law-of-the-case doctrine does not apply to the ALJ's RFC determination regarding plaintiff's sleep apnea due to the availability of new evidence concerning plaintiff's sleep apnea.  See id. at 7.  Alternatively, the Commissioner argues that, even in the absence of any new evidence, the law-of-the-case doctrine would not bar the ALJ from rendering his RFC determination with respect to plaintiff's sleep apnea because the ultimate determination of a plaintiff's RFC is reserved to the Commissioner and the Court's 2015 remand instructions "did not dictate what the particular RFC should be."  Id. at 9.

"The regulation governing agency decisions after remand from federal court provides that '[a]ny issues relating to your claim may be considered by the [ALJ] *whether or not they were raised in the administrative proceedings leading to the final decision in your case*.'" Thompson v. Astrue, 583 F. Supp. 2d 472, 474 (S.D.N.Y. 2008) (citing 20 C.F.R. § 404.983).  However, the "law of the case doctrine," which applies to administrative agencies on remand, "prevents the relitigation of a settled issue in a case and requires courts to adhere to decisions made in earlier proceedings."  Brachtel v.

11

Apfel, 132 F.3d 417, 419 (8th Cir. 1997) (internal quotation marks and citations omitted); see Gladle v. Astrue, No. 7:12-CV-284 (NAM), 2013 WL 4543147, at *3 (N.D.N.Y. Aug. 27, 2013).  Further, "district courts have the power to limit the scope of remand by specifying the actions to be taken by the ALJ."  Thompson, 583 F. Supp. 2d at 475; see Sullivan v. Hudson, 490 U.S. 877, 885 (1989) ("[T]he district court's remand order will often include detailed instructions concerning the scope of the remand. . . .  Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review.").  Based on the foregoing, "in the absence of limiting instructions or court findings, the Commissioner may revisit on remand any issues relating to the application for disability benefits."  Thompson, 583 F. Supp. 2d at 475.

As stated above, the Court's January 2015 Order remanded the matter to the Commissioner upon the following two findings: (1) that "[t]he physical component of the RFC finding [wa]s supported by substantial evidence with one exception. . . . the sleep apnea and napping requirement should have been considered severe at step two and should have been factored into the RFC finding"; and (2) that further proceedings were necessary to illicit the testimony of a vocational expert to account for plaintiff's moderate limitation in concentration, persistence, or pace in making the step five determination.  T. at 609.  With respect to the first finding concerning plaintiff's sleep apnea and napping, the Court made two specific findings.  First, the Court noted that "Dr. Rosenberg testified that plaintiff required at least ten minutes rest per hour and could be expected to be absent up to four times per month."  Id.  Second, the Court observed

that Dr. Magurno "noted napping" and that "plaintiff's coworkers testified that they confirmed her napping." Id.

Here, although ALJ Theurer found plaintiff's sleep apnea to be a severe impairment at step two in accordance with the Court's remand instructions, he did not include any limitation associated therewith, namely plaintiff's napping requirement, in his RFC determination. See T. at 924, 927. As addressed above, ALJ Theurer rendered an RFC determination devoid of any limitations associated with plaintiff's sleep apnea or napping requirement. See id. at 927. Instead, ALJ Theurer provided the following analysis in declining to include plaintiff's sleep apnea in his RFC determination:

> While [plaintiff] does have a history of sleep apnea, it has been described as moderate. In addition, when [plaintiff] has used CPAP as directed, she has not had any apnea/hypopnea events. In 2013, she reported no mask leaks and no issues with apnea/hypopnea events. The only time she has reported issues is when she has not been compliant.

Id. at 930 (internal citations omitted). Thus, although ALJ Theurer acknowledged the Court's directive on remand, he declined to follow it completely. See id. at 921, 927.

Further, the Commissioner's arguments that the Court's 2015 remand Order directed a finding that plaintiff's sleep apnea was severe but did not direct any specific RFC determination, and that plaintiff misconstrues the remand directive as requiring only that the ALJ obtain the testimony of a vocational expert and consider Albirigi's deposition testimony is unpersuasive. See Dkt. No. 15 at 6,7. Indeed, ALJ Theurer characterized the Court's remand instruction in similar terms. See T. at 921. However, the Court and the Appeals Council made clear in its vacatur of ALJ Fein's second decision that the Court's remand instructions required the ALJ to include in the RFC

13

limitations associated with plaintiff's sleep apnea and napping requirement by providing that:

> The . . . decision . . . states that [plaintiff's] sleep apnea is not a severe impairment because there is no evidence from a medically acceptable source to establish a significant limitation on [her] ability to perform basic work activities. However, the U.S. District Court previously remanded the case, in part, because [plaintiff's] "sleep apnea and napping requirement should have been considered severe at step two and should have been factored into the RFC finding." Accordingly, further proceedings are required.

Id. at 1042 (emphasis added) (quoting id. at 609).  Thus, as plaintiff posits, ALJ Theurer's decision disregarded the remand instructions set forth by the Court's 2015 Order insofar as it failed to include any limitation in his RFC determination associated with plaintiff's sleep apnea or napping requirement, which constitutes reversable error. See Dkt. No. 9 at 6,7; Sullivan v. Hudson, 490 U.S. 877, 886 (1989) ("Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review."); see also Jeremy B. v. Comm'r of Soc. Sec., No. 2:18-CV-159 (JMC), 2019 WL 3297471, at *6 (D. Vt. July 23, 2019) ("The ALJ's failure to follow the Court's Order [on remand] is reversible error under both the mandate rule and the law-of-the-case doctrine." (internal quotation marks, citation, and footnote omitted)); Carrillo v. Heckler, 599 F. Supp. 1164, 1168 (S.D.N.Y. 1984) ("On the remand of a case after appeal, it is the duty of the lower court or the agency from which the appeal is taken, to comply with the mandate of the court and to obey the directions therein without variation." (internal quotation marks omitted)).  In addition, defendant's alternative argument that the Court was not permitted to direct that any specific findings be included in the RFC because the "'ultimate determination a

14

claimant's RFC is an issue reserved to the Commissioner'" fails to justify ALJ's Theurer disregard for the law-of-the-case doctrine and the Court's remand instruction.  See Dkt. No. 15 at 9 (quoting Knight v. Astrue, No. 10-CV-5301 (BMC), 2011 WL 4073603, at *8 (E.D.N.Y. Sept. 13, 2011)); see Brachtel, 132 F.3d at 420 ("The law of the case doctrine . . . applies to administrative agencies on remand.  Thus, if the District Court actually found that [the claimant] needed to lie down, the ALJ would be bound by that finding.") (internal quotation marks and citations omitted)); Thompson v. Astrue, 583 F. Supp. 2d 472, 476 (S.D.N.Y. 2008) ("[T]he Commissioner is . . . limited by any findings of the district court regarding the application for disability benefits.").

Further, the Court finds unpersuasive the Commissioner's contention that ALJ Theurer was justified in disregarding the Court's remand instruction because of the availability of new evidence that was not presented prior to either of ALJ Fein's decisions.  See Dkt. No. 15 at 7.  First, the Commissioner's argument that "the sheer volume of evidence not available to ALJ Fein, who rendered the December 2012 decision that was the subject of this Court's January 2015 decision, presents cogent and compelling reasons such that the [law-of-the-case] doctrine should not be applied" because at the time of the December 2012 decision the record contained only "17 medical exhibits" whereas there were "73 medical exhibits" before ALJ Theurer is, without more, irrelevant.  Id. at 7 (internal quotation marks and citation omitted).  The "new" evidence cited by defendant and relied on by ALJ Theurer fails to provide a cogent or compelling reason for failing to follow the Court's remand instruction concerning plaintiff's sleep apnea and napping requirement.  Dkt. No. 15 at 7.  The Commissioner points to two United Health Services ("UHS") reports from February 2013

and June[8] 2015 in support of this contention.  See id. at 8.  The February 2013 UHS treatment note states:

> History was obtained from the patient as well as filed documentation to date.  Ten minutes of the 15-minute visit was spent in consultation mode.  [Plaintiff] continues to utilize Nuvigil 250 mg 1 tablet q.a.m. in conjunction with her BiPAP therapy; however, she is continuing to suffer from daytime hypersomnolence.  She states she never feels rested when she wakes up in the morning. . . .  Her compliance is slightly below recommended.  She is 77% compliant.  We discussed increasing her compliance as well not only for sleep-related symptoms but cardiovascular benefits as well.

Id. at 525.  The June 2015 UHS treatment note provides:

> The patient presents for follow up of hypersomnia.  Patient states the [BiPAP] machine is old as [sic] is requiring about getting a new machine.  Patient states she is still tired all the time.  [B]orderline compliance, pt "was sick and could not tolerate the mask," on auto BiPAP with AHI reduced to 3.2/hour[.]

Id. at 793.

As an initial matter, both of the foregoing UHS notes cited by the Commissioner and ALJ Theurer indicate that plaintiff continued to suffer from hypersomnolence and hypersomnia in 2013 and 2015.  See Dkt. No. 15 at 8; T. at 930.  The Commissioner does not provide any explanation as to how these UHS notes provide a different portrait of plaintiff's sleep apnea and related symptom profile than the records produced prior to ALJ Fein's December 2012 decision and this Court's January 2015 Order.  Indeed, as the Court's 2015 decision noted, Dr. Magurno, plaintiff's consultative orthopedic examiner, indicated in his June 2011 note that plaintiff "has sleep apnea which is

---

[8] Defendant refers this document as being dated "November 2014."  See Dkt. No. 15 at 8.  However, the corresponding record cite, T. 793, contains a UHS report from June 2015.  Thus, it appears that defendant made a typographical error in this regard.

currently treated with CPAP as well as medication for alertness during the day, but she is still always tired" and "has to nap every day." Id. at 398.  Further, plaintiff's sister, who worked with her at her family's donut shop for approximately 16 years, and brother-in-law provided statements to the effect that plaintiff was frequently tired; unable to work through a full shift; and napped often, including during her shifts at the donut shop.  See id. at 247-48, 252-53.  Moreover, although both UHS notes indicate that plaintiff was less than fully compliant with her BiPAP therapy, it is uncertain, at best, how ALJ Theurer ascertained that "[t]he only time [plaintiff] has reported issues is when she has not been compliant." T. at 930.  Although "a remediable impairment is not disabling," Mongeur v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983), and evidence of plaintiff's noncompliance certainly undermines, to some degree, her claim that she continues to experience excessive daytime sleepiness despite treatment, there is no new record evidence that would support ALJ Theurer's conclusion that plaintiff only reports experiences of apnea/hypopnea when noncompliant.

In addition, the Endwell Family Physician records from 2010 to 2011 referenced by ALJ Theurer, which state that plaintiff made "no specific complaints," "[r]eports good energy levels," "and "[d]enies sleep problems" were contained in the original record before ALJ Fein and, therefore, do not constitute new evidence.  See, e.g., id. at 370. Finally, the Court finds unpersuasive the Commissioner's argument that, because Dr. Chandrasekhar, reviewed the medical records and stated that his medical source statement was unchanged, ALJ Theurer was free to disregard the Court's remand order.  See Dkt. No. 15 at 7-8.  This argument lacks force because it fails to address why a consultative medical examiner's medical source statement and testimony would

17

relieve the ALJ of following the remand Order. Thus, as the foregoing demonstrates, no new evidence was presented at the last hearing that would justify ALJ Theurer's disregard for the Court's direction on remand concerning plaintiff's sleep apnea and napping requirement.

As an additional matter, ALJ Theurer's failure to include plaintiff's sleep apnea and napping requirements into the RFC necessarily resulted in a flawed step five determination because it was based on an RFC that did not include limitations contemplated by the Court's remand instructions. See, e.g., Caternolo v. Astrue, No. 6:11-CV-6601 (MAT), 2013 WL 1819264, at *14 (W.D.N.Y. Apr. 29, 2013) ("[T]he Step Five determination necessarily was flawed because it was based upon an RFC marred by errors . . . ."). In particular, neither of the hypotheticals posed to vocational expert Serkin contained any restrictions associated with plaintiff's sleep apnea or napping requirement. See T. 1006-13. Despite the protracted nature of this proceeding and, although the Court is acutely aware of the formidable backlog of cases before the Commissioner, the ALJ's failure to comply with the Court's directive on remand cannot be excused as it impacts the ultimate decision of disability benefits in this matter. Because the Court has determined that remand is required based on the foregoing reasons, the Court declines to reach plaintiff's remaining arguments.

### III. Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby:

**ORDERED**, that plaintiff's motion (Dkt. No. 9) is **GRANTED**; and it is further

**ORDERED**, that the Commissioner's motion (Dkt. No. 15) is **DENIED**; and it is further

**ORDERED**, that this case be **REVERSED AND REMANDED**, pursuant to Sentence Four of 42 U.S.C. § 405(g) for proceedings consistent with this Memorandum-Decision and Order.

**IT IS SO ORDERED.**

Dated: July 13, 2020
     Albany, New York

Christian F. Hummel
U.S. Magistrate Judge